[Crim. No. 2768. Third Dist. Oct. 10, 1958.]

THE PEOPLE, Respondent, v. CEDRIC BAKER,
Appellant.

Thomas W. Martin, under appointment by the District Court of Appeal, and Landis, Bray & Martin for Appellant.

Edmund G. Brown, Attorney General, and Lloyd Hinkelman, Deputy Attorney General, for Respondent.

VAN DYKE, P. J.—This is an appeal from a judgment and order denying motion for new trial after a jury's verdict found appellant guilty of robbery.

We will first consider appellant's contention that the evidence is insufficient to sustain the verdict of the jury. There was evidence as follows: On October 4, 1956, appellant received possession of one Mary Todd's 1950 green Chevrolet to perform engine repairs. About 7 p. m. on that day appellant and one John Sanders, a codefendant with appellant herein, began using Mary Todd's car to drive around the Sacramento area. They called at the home of appellant's sister in

Carmichael, then at the residence of appellant's girl friend in Sacramento, and then drove into the western part of the city where a third man entered the car. The three drove around town for about an hour, then parked the car across the street from a service station. Sanders crossed the street and entered the station, where at knife-point he compelled the attendant to give him approximately $100. This happened about 10:30 to 11 o'clock p. m. The three drove from the scene of the robbery and to Land Park, where the attendant followed them in his own car. He was able to obtain the license number of Mary Todd's car. This he communicated to the police upon his return to the service station. The three men proceeded to Franklin and Fruitridge Boulevards, where Sanders and the stranger left the car. Appellant parked the car in the service station where he was employed as a mechanic. While there he encountered one Jack Hudson, who accompanied him to a bar located across the street from the station. In the bar, appellant told Hudson that he had "just pulled a job on the Lucky Market." He also told Hudson that a man had followed him from the scene of the robbery and had obtained his license number. Later appellant met Sanders and the third man at the apartment occupied by appellant and Sanders and there the three men divided the money obtained in the robbery. The third man received $20, Sanders $25 or $30, and appellant $35 at that time, and $15 at a later date. The foregoing recital of the evidence in the record makes it obvious that appellant's contention as to the insufficiency of the evidence to justify the jury's verdict is without merit.

Appellant contends that he was denied his rights in that he did not receive a fair and speedy trial. The record reveals that the information charging appellant with armed robbery and three prior felony convictions was filed November 7, 1956. Appellant entered his plea of not guilty on November 21st, following. At that time the court ordered the matter set for trial on January 9, 1957, 63 days from the filing of the information. Appellant was tried January 9th, 10th and 11th. Forty-nine days elapsed from the entry of plea to the beginning of the trial. Appellant asserts that the three days beyond the 60-day provision of section 1382 of the Penal Code and the 19 days beyond the 30-day provision provided by section 1050 of that code constituted the denial of a speedy trial as required by the statutes. ■ This record is silent with respect to the reasons for the delays. It equally is destitute of any record of objections raised by appellant as to

delay. On such a record we must presume that no objection was raised and that any postponement was with the sanction of the appellant. (*People* v. *Lamb*, 133 Cal.App.2d 179 [283 P.2d 727].) It is for the appellant to present a record which discloses error. ▇ The right to a speedy trial guaranteed by the Constitution and implemented by the statutes is a right that may be waived. (*People* v. *Tenedor*, 107 Cal.App.2d 581 [237 P.2d 679].) ▇ The record discloses that appellant and his counsel were present when the orders were made and raised no objection. Under such circumstances it is presumed that there was a waiver of any right to an earlier trial. (*People* v. *Anderson*, 126 Cal.App.2d 702, 704 [272 P.2d 805].)

▇ Appellant contends that he was denied a substantial right by the trial court's refusal to refer his case to the probation officer for report and recommendations. Appellant had admitted the commission of three prior felony convictions. He was not eligible to probation. Section 1203 of the Penal Code, provides, in effect: A defendant previously convicted of two felonies committed in this state or of two offenses which would have been felonies if committed in California, is ineligible for probation; further, that a person previously convicted of a single felony in California or of a single offense which would have been a felony if committed in this state, is barred from probation when convicted in California of robbery of the first degree.

▇ It, therefore, appears from the record herein that appellant was not entitled to probation and in such a situation section 1203 of the Penal Code provides only that the judge may, in his discretion, refer the matter to the probation officer for an investigation of the facts relevant to sentence. The trial court acted within its rights in refusing to refer appellant's case to the probation officer.

▇ Appellant contends that the trial court committed prejudicial error when, on a certain occasion, the court called counsel to the bench to discuss a matter outside of appellant's hearing. The record discloses the following: Appellant's accomplice in the crime, Sanders, was testifying for the prosecution. When asked to relate where he went and what he did on the evening of the robbery, he stated he would like to ask the judge a question, and further stated that he would rather not say anything at the time if his silence was agreeable to the court. A considerable colloquy followed between the court and counsel, and the attorney who had been defending Sanders was called in to advise Sanders if necessary. This attorney took

the position that his work was through and that he ought, therefore, not to claim or assume any right to represent the witness. The attorney informed the court that he had already told the witness to do what he thought was right concerning being a witness in the cause and that he felt he had no legal right to tell him what to do or not to do. The court then ordered the witness to answer questions and the witness proceeded to do so for a time until interrupted by an objection from counsel for the prosecution. His former attorney thereupon asked that the jury be excused, saying that he would like to make a statement to the court. The court did not excuse the jury, but told counsel that they could come up to the bench. Just what happened then, the record does not show, but at the end of whatever conversation was held the court ordered the trial to proceed and it did proceed without any objection from anyone and the witness continued his testimony. It is apparent that the conference, whatever it was, concerned the witness Sanders and his right to refuse to answer questions. No objection was made by appellant or his counsel at the time that anything was being said out of the hearing of appellant. His own counsel took part in the conversation at the bench. Therefore this record does not disclose a situation where in any practical sense appellant was not present at all times during the trial. It is for the appellant to show prejudice. (*People* v. *Isby*, 30 Cal.2d 879 [186 P.2d 405].) This record fails signally to meet that requirement.

■ Appellant contends the court was guilty of misconduct in questioning witnesses. It is unnecessary to quote those portions of the record referred to by appellant in support of this contention. We have examined them with care and find therein no instance wherein the trial court went beyond the proper performance of its duty to examine witnesses if necessary or appropriate in order to elicit facts material to a just determination of the case (*People* v. *Corrigan*, 48 Cal.2d 551, 559 [310 P.2d 953].) ■ Moreover, no objection was made to the questions asked, no motion to strike the answers given, and it is settled that a judge's examination of a witness may not be assigned as error on appeal where no objection was made when the questioning occurred. (*People* v. *Corrigan, supra,* p. 556.)

■ The contentions of error we have been discussing appear in appellant's brief filed in propria persona. After it was filed he requested this court to appoint counsel to assist him. This was done and a supplemental brief was filed by the

appointed counsel. Therein it is urged that the evidence was insufficient to support the verdict of the jury without the testimony of the witness Sanders; and that his testimony, since he was not corroborated, cannot be considered. It clearly appears from the record that Sanders was an accomplice and it results that his testimony must have been corroborated if it was to be considered. (Pen. Code, § 1111.) Excluding from consideration the testimony of Sanders, the record discloses the following: On October 4, 1956, Mary Todd. the owner of a 1950 green Chevrolet automobile with license number ASL 472, turned said vehicle over to one Earl Butts and appellant for engine repairs. Appellant, who was employed by Butts as a mechanic at Norwalk service station in Sacramento, drove the vehicle to the station and proceeded to repair it. Sometime around 7 o'clock on that evening the appellant and John Sanders, appellant's roommate, drove Mary Todd's vehicle to the home of appellant's sister in Carmichael. Around 8 o'clock the two men left her home and drove to the home of one Bertha Lawrence in Sacramento. Between 10:30 and 11 p. m. one Charles R. Wallace, an employee at the College Chevron service station in Sacramento, was held up at knife point by Sanders. Sanders ran from the scene of the robbery to a parked vehicle where two men were waiting for him. The three men got into the vehicle and drove south on Freeport Boulevard. Wallace followed the vehicle into Land Park where he overtook it and was able to ascertain that it was a 1950 green Chevrolet with license number ASL 472. At about 11 p. m. appellant was seen driving the getaway vehicle into the Norwalk station at Franklin and Fruitridge Boulevards. He was seen to back the vehicle into the tune-up bay of the station and park it. After parking the automobile he met one Jack Hudson, a fellow employee, and together they went across the street to a bar about half a block from the station. While there appellant told Hudson that he had "'just pulled a job on the Lucky Market.'" He also told Hudson that a man had followed him and had obtained his license number. After his arrest he was questioned by the police and made several inconsistent statements with respect to his activities on October 4th. We thus have appellant in custody of the car used in the robbery, we have him driving that car in the company of his roommate Sanders between the hours of 7 and 9 p. m., we have him driving the same car shortly after the robbery, during which time he was followed by Wallace, the victim of the robbery, we have appellant's statement to Hudson that

he was in trouble because he had pulled a job "on the Lucky Market" and that someone had followed him and gotten his license number. That is enough. He had told Hudson he had pulled a job; that someone had followed him from that job and gotten his license number. The fact that he said the job was on the Lucky Market, rather than the service station, does not preclude the inference that this was mere concealment. In testing the sufficiency of corroboration, the trier of fact could determine that his statement he had pulled a job and been followed so closely that the follower had gotten his license number, together with the testimony as to Wallace's pursuit of the getaway car was sufficient to connect him with the crime so as to permit consideration of the testimony of the accomplice.

 Appellant next contends that the court committed prejudicial error in instructing the jury as to accomplices. It was the theory of the prosecution and the implied finding of the jury that appellant had waited in the getaway car while Sanders went into the station and committed the actual robbery at knife point. This theory was borne out by the evidence and it may, therefore, be said as a matter of law that Sanders was appellant's accomplice. But appellant complains that the court in one instruction submitted the issue of Sanders' complicity to the jury as a question of fact and in another instruction told them that he was an accomplice as a matter of law. The court first gave the usual instructions defining an accomplice and telling the jury that it was for them to decide under the evidence whether or not Sanders qualified as such. Shortly thereafter, the court told them that as a matter of law under the evidence in the case he was an accomplice and that they should consider him as such in considering whether or not he had been sufficiently corroborated and in weighing his testimony if they found that he had been. We think no prejudice could have been suffered from these instructions.

The court told the jury that all persons concerned in the commission of a crime who either directly and actively committed the act constituting the offense or who knowingly and with criminal intent aided and abetted in its commission were regarded in law as principals; that a conviction, however, could not be had upon the testimony of an accomplice unless it be corroborated with such evidence as should tend to connect the defendant with the commission of the offense; that an accomplice is one who is liable to prosecution for the identical

offense charged against the defendant on trial; that in determining corroboration the jury should examine all other evidence in the case other than that of the accomplice with a view of determining if there was therein any inculpatory evidence, that is, evidence tending to connect the defendant with the commission of the crime; that if such other evidence did do that then the testimony of the accomplice was corroborated and that if it did not then there was no corroboration, although the accomplice might be corroborated in regard to any number of facts sworn to by him. Both appellant and the prosecution had requested the giving by the court of CALJIC Number 822, but the requests were refused on the ground that the matter had already been covered. ▓▓ It is noted that the requested instruction contains the following: ''The corroboration of the testimony of an accomplice required by the law is not sufficient if it merely shows the commission of the offense or some or all of the circumstances thereof, or if it does no more than raise a suspicion of the guilt of the defendant.'' The requested instruction was proper and it might well have been given since the additional discussion it contains of the sufficiency of corroboration is well calculated to make that matter clearer to the jury than to tell them simply that evidence of corroboration was not sufficient unless it tended to connect the defendant with the commission of the crime. However, we cannot predicate prejudicial error upon this failure to give the explanatory instruction. We have already discussed the quantum of evidence connecting the defendant with the commission of the crime with which he was charged and, in view of its ample and substantial character, we do not believe that had the additional instruction requested been given any different result would have followed.

▓▓ Appellant contends that the court committed prejudicial error in denying appellant's requested instruction on accessories. Appellant was charged and prosecuted as a principal in the commission of the crime. It was the theory of the prosecution, supported by ample testimony and reflected in the verdict of the jury, that appellant was an active participant before the commission of the crime. All persons concerned in the commission of a crime are principals. Every person who, after a felony has been committed, harbors, conceals, or aids a principal with the intent that said principal may avoid or escape from arrest, trial, conviction or punish-

ment, having knowledge that said principal has committed such felony, or has been charged with such felony, or convicted thereof, is an accessory to such felony. (Pen. Code, §§ 31, 32.) Appellant points to evidence of acts upon his part committed after Sanders had robbed Wallace which he argues would have justified the jury in finding him guilty of the crime of being an accessory. However, he was not prosecuted as such. The crime of being an accessory is not a necessarily included offense in the principal crime. (*People* v. *Brown*, 131 Cal.App.2d 643, 658 [281 P.2d 319].) Appellant, therefore, could not have been convicted as an accessory and hence it was not error to refuse to instruct as to accessories after the fact, for such an instruction would not have been responsive to any issue before the court. (*People* v. *Brown, supra.*)

No further assignments of error merit consideration.

The judgment and the order appealed from are affirmed.

Peek, J., and Schottky, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 3, 1958.